# IN THE SUPREME COURT OF CALIFORNIA

PROTECTING OUR WATER AND ENVIRONMENTAL
RESOURCES et al.,
Plaintiffs and Appellants,
v.
COUNTY OF STANISLAUS et al.,
Defendants and Respondents.

S251709

Fifth Appellate District
F073634

Stanislaus County Superior Court
2006153

August 27, 2020

Justice Corrigan authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Chin, Liu, Cuéllar, Kruger, and Groban concurred.

PROTECTING OUR WATER AND ENVIRONMENTAL
RESOURCES v. COUNTY OF STANISLAUS

S251709


Opinion of the Court by Corrigan, J.


The California Environmental Quality Act (CEQA or the Act; Pub. Resources Code, § 21000 et seq.)[1] regulates activities carried out, funded, or approved by the government. Any government action that may directly or indirectly cause a physical change to the environment is a "project." (§ 21065; see § 21060.5 [" '[e]nvironment' " defined].) Generally, the issuance of a permit is a project (§ 21065, subd. (c)) because it could authorize a physical environmental change. Projects can be either discretionary or ministerial actions. Unless exempted, discretionary projects require some level of environmental review; ministerial projects do not. (§ 21080, subds. (a), (b)(1).) This case involves the distinction between discretionary and ministerial projects.

Stanislaus County (County) issues well construction permits under an ordinance that incorporates state well construction standards. It categorically classifies a subset of those projects as ministerial. Plaintiffs[2] challenge that classification practice, alleging the permit issuances are actually discretionary projects requiring CEQA review. They

_____

[1]     Unless noted, all statutory references are to the Public Resources Code.
[2]     Plaintiffs are Protecting Our Water and Environmental Resources and the California Sportfishing Protection Alliance.

seek declaratory and injunctive relief to stop the classification practice. The trial court found the permit issuances are ministerial and the Court of Appeal reversed. We hold the blanket classification of all these permit issuances as ministerial is unlawful. County may be correct that many of its decisions are ministerial. However, as we explain, under the ordinance authorizing the issuance of these permits, some of County's decisions may be discretionary. Accordingly, classifying all issuances as ministerial violates CEQA. Plaintiffs are entitled to a declaration to that effect. But they are not entitled to injunctive relief at this stage, because they have not demonstrated that *all* permit decisions covered by the classification practice are discretionary.

## I. BACKGROUND

### A. *The CEQA Framework*

CEQA was enacted to (1) inform the government and public about a proposed activity's potential environmental impacts; (2) identify ways to reduce, or avoid, those impacts; (3) require project changes through alternatives or mitigation measures when feasible; and (4) disclose the government's rationale for approving a project. (*California Building Industry Assn. v. Bay Area Air Quality Management Dist.* (2015) 62 Cal.4th 369, 382 (*Building Industry*).) CEQA embodies a central state policy requiring "state and local governmental entities to perform their duties 'so that major consideration is given to preventing environmental damage.' " (*Friends of the Eel River v. North Coast Railroad Authority* (2017) 3 Cal.5th 677, 711, quoting § 21000, subd. (g).) Accordingly, CEQA prescribes how governmental decisions will be made whenever an agency undertakes, approves, or funds a project. (*Union of Medical*

*Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1185 (*Medical Marijuana Patients*).)

Under CEQA, an agency uses "a multistep decision tree." (*Medical Marijuana Patients*, *supra*, 7 Cal.5th at p. 1185; see also Cal. Code Regs., tit. 14, § 15002, subd. (k).)[3] Once an activity is determined to be a project, the next question is whether the project is exempt. (CEQA Guidelines, §§ 15002, subd. (k)(1), 15061, subd. (a).) Many types of projects, as well as all ministerial ones, are exempted. (§ 21080, subd. (b)(1) [exemption for ministerial projects]; CEQA Guidelines, § 15268, subd. (a) [same]; see generally §§ 21080, subd. (b), 21080.01–21080.07; CEQA Guidelines, §§ 15300–15333.)

If an agency concludes a particular project is exempt, it may file a notice of exemption, citing legal and factual support for its conclusion. (§ 21152, subd. (b); CEQA Guidelines, § 15062, subd. (a).) If the project is discretionary and does not qualify for any other exemption, the agency must conduct an environmental review. (*Medical Marijuana Patients*, *supra*, 7 Cal.5th at p. 1186.) A required environmental review proceeds in stages. The agency conducts an initial study to assess potential environmental impacts. (CEQA Guidelines, §§ 15002, subd. (k)(2), 15063, subd. (a).) If there is no substantial evidence that the project may significantly affect the environment, the agency prepares a negative declaration and environmental

_____

[3] CEQA is "implemented by an extensive series of administrative regulations promulgated by the Secretary of the Natural Resources Agency." (*Medical Marijuana Patients*, *supra*, 7 Cal.5th at p. 1184.) These regulations can be found at title 14, division 6, chapter 3 of the California Code of Regulations, and will be referred to as the "CEQA Guidelines."

review ends. (§ 21080, subd. (c)(1); CEQA Guidelines, §§ 15002, subd. (k)(2), 15063, subd. (b)(2), 15070, subd. (a).) If potentially significant environmental effects are discovered, but the project applicant agrees to changes that would avoid or mitigate them, the agency prepares a mitigated negative declaration (§ 21080, subd. (c)(2); CEQA Guidelines, § 15070, subd. (b)), which also ends CEQA review. (*Medical Marijuana Patients*, at pp. 1186–1187.) Finally, if the initial study reveals substantial evidence that the project may have a significant environmental impact and a mitigated negative declaration is inappropriate, the agency must prepare and certify an environmental impact report (EIR) before approving the project. (§ 21080, subd. (d); CEQA Guidelines, §§ 15002, subd. (k)(3), 15063, subd. (b)(1); *Medical Marijuana Patients*, at p. 1187.)

### B. Rules Regarding Project Classification

A permit issuance decision can be discretionary or ministerial depending on the circumstances. Those terms are defined in the CEQA Guidelines. A project is discretionary when an agency is required to exercise judgment or deliberation in deciding whether to approve an activity. (CEQA Guidelines, § 15357.) It is distinguished from a ministerial project, for which the agency merely determines whether applicable statutes, ordinances, regulations, or other fixed standards have been satisfied. (*Ibid*.) Ministerial projects are those for which "the law requires [an] agency to act . . . in a set way without allowing the agency to use its own judgment . . . ." (CEQA Guidelines, § 15002, subd. (i)(1).) They involve "little or no personal judgment by the public official as to the wisdom or manner of carrying out the project. The public official merely applies the law to the facts as presented but uses no special

discretion or judgment in reaching a decision." (CEQA Guidelines, § 15369.)

The CEQA Guidelines encourage agencies to classify ministerial projects on either a categorical or individual basis. (CEQA Guidelines, § 15268, subds. (a), (c).) That classification may be challenged for abuse of discretion. (*Sierra Club v. County of Sonoma* (2017) 11 Cal.App.5th 11, 23 (*County of Sonoma*).) As explained below, the nature and scope of judicial review under this standard depends on whether the determination being evaluated is factual or legal in character. (See *post*, Pt. II.B.)

### C. County Well Permitting Ordinances

Two chapters of the Stanislaus County Code govern well permit issuance. Chapter 9.36 regulates the location, construction, maintenance, abandonment, and destruction of wells that might affect the quality and potability of groundwater. (Stanislaus County Code, § 9.36.010.) Chapter 9.37 regulates the extraction and export of groundwater. (Stanislaus County Code, § 9.37.040.)[4]

### 1. Chapter 9.36

Chapter 9.36, enacted in 1973, requires a permit from the county health officer to construct, repair, or destroy a water well. (Stanislaus County Code, § 9.36.030.) The chapter sets standards for each activity and conditions permit approval on compliance. (Stanislaus County Code, § 9.36.030.) Here, we

---

[4] All designated references to Chapter 9.36 and Chapter 9.37 are to title 9 of the Stanislaus County Code.

consider only well construction permits. Many permit standards are incorporated by reference to a state Department of Water Resources bulletin.[5]

Four of these incorporated state standards are relevant here. Section 8.A of the bulletin (Standard 8.A) addresses the distance between proposed wells and potential sources of contamination. It requires that all wells "be located an adequate horizontal distance" from those sources.[6] The standard lists

---

[5] Section 9.36.150 of the Stanislaus County Code provides that, except as otherwise provided, standards for well construction "shall be as set forth in Chapter II of the Department of Water Resources Bulletin No. 74." The bulletin referred to in this section was first published in 1968, as Department of Water Resources Bulletin No. 74, *Water Well Standards: State of California.* (Dept. of Water Resources, Bulletin No. 74-90, June 1991, p. 3 [detailing the publication history of Bulletin No. 74].) In 1981, a revised version was published as Bulletin No. 74-81. In 1991, a supplement was issued as Bulletin No. 74-90. The bulletin and its supplement (collectively, Bulletin No. 74) have been described as "a 90-page document filled with technical specifications for water wells." (*California Groundwater Assn. v. Semitropic Water Storage Dist.* (2009) 178 Cal.App.4th 1460, 1469.) Under Water Code section 13801, subdivision (c), counties are required to adopt well construction ordinances that meet or exceed the standards in Bulletin No. 74. Many counties have incorporated the bulletin's standards for well design and construction into their well permitting ordinances.

[6] Potential contamination sources include: storm sewers; septic tanks; sewage and industrial waste ponds; barnyards and stable areas; feedlots; solid waste disposal sites; and pipelines and storage tanks for petroleum and other chemicals, pesticides, and fertilizers.

separation distances that are generally considered adequate for specific situations. For example, it notes that a well should be located at least 50 feet from any sewer line; 100 feet from any watertight septic tank or animal enclosure; and 150 feet from any cesspool or seepage pit. However, the standard makes clear that the distances are not intended to be rigidly applied. It notes that: "[m]any variables are involved in determining the 'safe' separation distance;" "[n]o set separation distance is adequate and reasonable for all conditions;" and "[d]etermination of the safe separation distance for individual wells requires detailed evaluation of existing and future site conditions." It also provides that "[c]onsideration should . . . be given to adequate separation from sites or areas with known or suspected soil or water pollution or contamination." Significantly, it allows the agency to increase or decrease suggested distances, depending on attendant circumstances.

The other relevant state standards are taken from Sections 8.B, 8.C, and 9 of Bulletin No. 74.[7] Standard 8.B provides that, "[w]here possible, a well shall be located up the ground water gradient from potential sources of pollution or contamination." Under Standard 8.C, "[i]f possible, a well should be located outside areas of flooding." Standard 9 requires that a well's "annular space" be "effectively sealed" and establishes minimum surface seal depths.

Chapter 9.36 also allows for variance permits. The county health officer "may authorize an exception to any provision of this chapter when, in his/her opinion, the application of such provision is unnecessary." (Stanislaus County Code,

---

[7]    These will be referred to as Standards 8.B, 8.C, and 9.

§ 9.36.110.) When authorizing a variance, the health officer may prescribe "such conditions as, in his or her judgment, are necessary to protect the waters of the state." (Stanislaus County Code, § 9.36.110.)

### 2. *Chapter 9.37*

In 2014, County's board of supervisors amended Chapter 9.37 to prohibit the unsustainable extraction and export of groundwater. (Stanislaus County Code, § 9.37.040, subd. A.) The amendment requires that future permit applications satisfy both Chapter 9.36 and Chapter 9.37, unless exempt from the latter.[8] (Stanislaus County Code, § 9.37.045, subd. A.)

### D. *County's Classification of Well Construction Permits*

In 1983 County adopted its own CEQA regulations which generally classified issuance of all well construction permits as ministerial projects unless the county health officer granted a variance. A variance permit was designated as a discretionary project, triggering environmental review. As enacted, County's regulations provided that the issuance of a nonvariance well construction permit was presumed to be ministerial "[i]n the absence of any discretionary provision contained in the relevant ordinance." The parties stipulated that County's practice has been to treat *all* nonvariance permit issuances as ministerial. This practice ignores the quoted clause, which mirrors language in CEQA Guidelines, section 15268, subdivision (b). We address County's practice here.

---

[8] Chapter 9.37 exempts, inter alia, wells that extract two acre-feet or less per year. (Stanislaus County Code, §§ 9.37.050, subd. A.2, 9.37.030, subd. 10.)

Since 2014, County has evaluated permit applications as follows. First, it determines whether an application is exempt from Chapter 9.37. If not exempt, approval or denial is classified as discretionary. Second, if the application is exempt from Chapter 9.37, County determines whether it seeks a variance under Chapter 9.36. Third, if the application is exempt from Chapter 9.37 *and* does not seek a variance, its approval or denial is classified as a ministerial project. This third classification is challenged here. Plaintiffs argue that even if an application is exempt from Chapter 9.37 and seeks no variance under Chapter 9.36 its approval is still a discretionary project.

*E. This Litigation*

In January 2014, plaintiffs filed this action alleging "a pattern and practice" of approving well construction permits without CEQA review. They assert that all permit issuance decisions are discretionary projects because County can "deny [a] permit or require changes in the project as a condition of permit approval to address concerns relating to environmental impacts." For example, a permit application could be denied or ordered modified if the distance between the proposed well and a potential contamination source is deemed inadequate (Standard 8.A) or if the proposed well is situated in a flooding area when it could be located elsewhere (Standard 8.C). Plaintiffs urge that, because determining compliance with Chapter 9.36's standards requires the exercise of subjective judgment, the projects are discretionary. Plaintiffs seek a declaration that County's practice of approving misclassified permits without environmental review is "unlawful," and seek

to enjoin County from issuing any more permits until it changes its policy.[9]

The case was submitted on stipulated facts. The trial court ruled that County's approval of all nonvariance permits was ministerial. The Court of Appeal reversed, concluding that "issuance of well construction permits is a 'discretionary' decision." The appellate court acknowledged that many of the decisions County might make under Chapter 9.36 would be ministerial. Specifically, it concluded that County's determinations under Standards 8.B, 8.C, and 9 were all ministerial acts. However, it found that County's compliance determination under Standard 8.A involved sufficient discretionary authority to make the issuance of all permits under Chapter 9.36 discretionary.

We granted County's petition for review. Plaintiffs have asked us to also reconsider the Court of Appeal's conclusions regarding Standards 8.B and 8.C. We decline to do so as we explain below.

## II. DISCUSSION

Whether County's issuance of the challenged permits is discretionary or ministerial depends on the circumstances. As a result, County may not *categorically* classify all these projects as ministerial. For the same reason, plaintiffs have not demonstrated that *all* issuance decisions are properly designated as discretionary.

---

[9] In a separate action, plaintiffs sought writs of mandate to invalidate 60 individual well construction permits issued by County without environmental review. That litigation ultimately settled, and plaintiffs dismissed the action.

### A. *Discretionary v. Ministerial Projects*

Distinguishing discretionary projects from ministerial ones turns on whether the exercise of judgment or deliberation is required in making the decision. (CEQA Guidelines, § 15357.) The "key question is whether the public agency can use its subjective judgment to decide whether and how to carry out or approve [the] project." (*Ibid*.; see also CEQA Guidelines, § 15002, subd. (i).) "Whether an agency has discretionary or ministerial controls over a project depends on the authority granted by the law providing the controls over the activity." (CEQA Guidelines, § 15002, subd. (i)(2).)

Ministerial projects are those in which the agency merely determines "conformity with applicable statutes, ordinances, regulations, or other fixed standards." (CEQA Guidelines, § 15357; see also CEQA Guidelines, § 15369.) If the law requires an agency "to act on a project in a set way without allowing the agency to use its own judgment," the project is ministerial. (CEQA Guidelines, § 15002, subd. (i)(1).) Under the guidelines, certain actions, including the issuance of a building permit, are presumed to be ministerial "[i]n the absence of any discretionary provision contained in the local ordinance or other law establishing the requirements for the permit, license, or other entitlement for use." (CEQA Guidelines, § 15268, subd. (b).) As noted, County used this same quoted language when articulating its own CEQA regulations in 1983.

Courts have developed a functional test to further refine this distinction. (*Friends of Juana Briones House v. City of Palo Alto* (2010) 190 Cal.App.4th 286, 302 (*Friends of Juana Briones House*).) Like the CEQA Guidelines, the functional test focuses on the scope of an agency's discretion. The " 'touchstone' " is

11

whether the relevant "approval process . . . allows the government to shape the project in any way [by requiring modifications] which could respond to any of the concerns which might be identified" by environmental review. (*Friends of Westwood, Inc. v. City of Los Angeles* (1987) 191 Cal.App.3d 259, 267 (*Friends of Westwood*); see also *Mountain Lion Foundation v. Fish & Game Com.* (1997) 16 Cal.4th 105, 117.) If so, the project is discretionary. On the other hand, a project is ministerial "when a private party can *legally compel* approval without any changes in the design of its project which might alleviate adverse environmental consequences." (*Friends of Westwood*, at p. 267.) "The statutory distinction between discretionary and purely ministerial projects implicitly recognizes that unless a public agency [is authorized to] shape the project in a way that would respond to concerns raised in an EIR, or its functional equivalent, environmental review would be a meaningless exercise." (*Mountain Lion*, at p. 117.)

Under the functional test, a decision is ministerial if the agency has no discretionary authority to deny or shape the project. (*Leach v. City of San Diego* (1990) 220 Cal.App.3d 389, 393; see also *Health First v. March Joint Powers Authority* (2009) 174 Cal.App.4th 1135, 1144–1145.) Further, even if a statute grants an agency *some* discretionary authority over an aspect of a project, the project is ministerial for CEQA purposes if the agency lacks authority to address *environmental* impacts. In *McCorkle Eastside Neighborhood Group v. City of St. Helena* (2018) 31 Cal.App.5th 80, for example, the agency's power to conduct an aesthetic design review did not make a project discretionary because the agency "lack[ed] . . . any discretion to address environmental effects." (*Id.* at p. 94; see also *Friends of*

*Juana Briones House*, *supra*, 190 Cal.App.4th at p. 308 [discretionary authority to *delay* a project did not render its approval discretionary].)

Conversely if the agency is empowered to disapprove or condition approval of a project based on environmental concerns that might be uncovered by CEQA review, the project is discretionary. In a ministerial decision, the laws, regulations, and other standards are policy decisions made by the enactors. The agency's role is to apply those standards as adopted. If an agency refuses to approve a ministerial project, an affected party may seek a writ of mandate, ordering that approval be granted because the enacted standards have been satisfied. For discretionary decisions, on the other hand, the policy makers have empowered the agency to make individualized judgments in light of the particular circumstances involved.

*Friends of Westwood*, *supra*, 191 Cal.App.3d 259 held the issuance of a building permit for a major construction project was discretionary. (*Id.* at p. 262.) Under its code the city could require project modifications to ensure adequate ingress and egress for public streets, and to minimize interference with traffic flow. (*Id.* at p. 274.) The city also had discretion to allow departures from certain standards established by the city council, and exempt the project from conforming to the city's general plan. (*Id.* at pp. 274–275.) Finally, the city exercised its discretion by treating a proposed tower as two separate structures to satisfy area density ratios. (*Id.* at p. 275.)

Similarly, *Miller v. City of Hermosa Beach* (1993) 13 Cal.App.4th 1118 held that issuing a hotel building permit was a discretionary project. As part of the permit approval process, the applicant was required to obtain analyses of traffic impacts,

soil settlement, and effects on a downstream sewer line. (*Id*. at p. 1141.) The court concluded that the applicant could not have legally compelled approval without making changes to alleviate adverse environmental consequences revealed during the permitting process. (*Id*. at p. 1142.) Thus, the project was discretionary. (*Ibid*.)

These Courts of Appeal have employed the functional test to help determine whether individual project approvals were ministerial or discretionary. The question before us is slightly different. It is not whether a specific decision was ministerial, but instead whether, in at least some circumstances, Standard 8.A requires County to exercise discretion, and whether its classification of all such permits as ministerial is permissible in light of this possibility. Because we are not called upon to rule on the status of any individual permit, the functional test has no direct application here. Nevertheless, the factors set forth by the Courts of Appeal will be helpful in evaluating the propriety of County's categorical classification.

### B. Standard of Review

In general, judicial review of agency actions for CEQA compliance extends to "whether there was a prejudicial abuse of discretion." (§ 21168.5; see *Muzzy Ranch Co. v. Solano County Airport Land Use Com*. (2007) 41 Cal.4th 372, 381.) "Abuse of discretion is established if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence." (§ 21168.5.) An agency's declaration of a ministerial exemption is reviewed for

abuse of discretion. (*County of Sonoma*, *supra*, 11 Cal.App.5th at p. 23.)

In a CEQA case, the appellate court's review "is the same as the trial court's: [It] reviews the agency's action, not the trial court's decision; in that sense appellate judicial review under CEQA is de novo." (*Vineyard Area Citizens for Responsible Growth, Inc. v. City of Rancho Cordova* (2007) 40 Cal.4th 412, 427.) The reviewing court independently determines whether the record "demonstrates any legal error" by the agency and deferentially considers whether the record "contains substantial evidence to support [the agency's] factual determinations." (*Ibid*.) When an agency concludes an activity is exempt based on factual considerations, a court reviews for substantial evidence. If the agency's determination "involves pure questions of law, we review those questions de novo." (*County of Sonoma*, *supra*, 11 Cal.App.5th at p. 24.)

As mentioned, CEQA encourages agencies to identify which projects are ministerial on either a categorical or case-by-case basis. (CEQA Guidelines, § 15268, subds. (a), (c).) Here, County *categorically* classifies the permits as ministerial. Unlike a case-by-case approach, County's categorical treatment does not take into account whether judgment was exercised in deciding to issue a particular permit. County's position is that the permits are ministerial regardless of the circumstances. This argument rests on County's legal interpretation of Chapter 9.36. We review that interpretation de novo.

*C. Analysis*

In determining whether County's issuance of these permits is a discretionary project, we are guided by the principle

that CEQA must be interpreted "to afford the fullest possible protection to the environment within the reasonable scope of the statutory language." (*Friends of Mammoth v. Board of Supervisors* (1972) 8 Cal.3d 247, 259; see also *Sierra Club v. County of Fresno* (2018) 6 Cal.5th 502, 511.) We also consider the Legislature's objectives: to reduce or avoid environmental damage by requiring project changes when feasible. (*Building Industry, supra*, 62 Cal.4th at p. 382.) Against this backdrop, we conclude County's practice of *categorically* classifying all the permits as ministerial violates CEQA.

The plain language of Standard 8.A authorizes County to exercise "judgment or deliberation when [it] decides to approve or disapprove" a permit. (CEQA Guidelines, § 15357.) Although the standard sets out distances that are generally considered adequate, it makes clear that individualized judgment may be required. It notes that an "adequate horizontal distance" may depend on "[m]any variables" and "[n]o set separation distance is adequate and reasonable for all conditions." (Standard 8.A.) The determination for each well "requires detailed evaluation of existing and future site conditions." (*Ibid.*) The standard does provide a list of minimum suggested distances that are "generally considered adequate," but notes that "[l]ocal conditions may require greater separation distances." (*Ibid.*) Where, "in the opinion of the enforcing agency adverse conditions exist," the standard requires that the suggested distance be increased, or special means of protection be provided. (*Ibid.*) While, under the standard, lesser distances "may be acceptable," approval of all lesser distances requires agency approval "on a case-by-case basis." (*Ibid.*)

This language confers significant discretion on the county health officer to deviate from the general standards, allowing either relaxed or heightened requirements depending on the circumstances. If he or she determines the distance between a proposed well and a contamination source is inadequate, the officer may deny a permit or condition approval on project modifications. (Stanislaus County Code, § 9.36.030.) The permit approval process allows County to shape a well construction project in response to concerns that could be identified by an environmental review. (See *Friends of Westwood, supra,* 191 Cal.App.3d at p. 267.) A permit issuance in which County is required to exercise independent judgment under Standard 8.A cannot be classified as ministerial.

County argues against this conclusion. Acknowledging that Standard 8.A affords some flexibility, it maintains that the standard's suggested minimum distances and other technical criteria are objective guideposts constraining its discretion. When read as a whole, it claims Standard 8.A calls for the exercise of "little or no judgment" in reviewing separation distances.

The argument fails. County's position would be much stronger if the objective minimum distances were the *only* criteria the agency was authorized to consider in making the issuance decision. But, as pointed out, that is not the case. Read as a whole, the minimum distances are a starting point, but one around which there is considerable latitude.

Next, County argues that, even if Standard 8.A admits of some discretion, its "well-separation standard is only one part of [a] much larger regulatory scheme." County points out that Chapter 9.36 contains numerous provisions, including

Standards 8.B, 8.C, and 9, all of which the Court of Appeal found to involve ministerial decisions. Considering the process as a whole, County argues that the decision to issue a permit under Chapter 9.36 is ministerial. County urges that "CEQA is not triggered just because the agency exercises judgment" as to one aspect of a project and that a holding to the contrary will create a "hair trigger" for CEQA review.

This argument is inconsistent with the CEQA Guidelines, which provide that, when a project "involves an approval that contains elements of both a ministerial action and a discretionary action, the project will be deemed to be discretionary." (CEQA Guidelines, § 15268, subd. (d).) It cannot be reconciled with judicial declarations that a project is discretionary if the government can "shape the project in *any* way which could respond to *any* of the concerns which might be identified" during an environmental review (*Friends of Westwood, supra*, 191 Cal.App.3d at p. 267, italics added), and that any "doubt whether a project is ministerial or discretionary should be resolved in favor of the latter characterization." (*People v. Department of Housing & Community Dev.* (1975) 45 Cal.App.3d 185, 194.)

Next, County argues that permit issuance is ministerial because it has only limited options under Chapter 9.36 to mitigate potential environmental damage. According to County, all it can do under Standard 8.A is adjust the location of a well to prevent groundwater contamination. Chapter 9.36 does not allow County to address other environmental concerns, like groundwater depletion, nor does it allow County to impose other measures that might prevent contamination, such as regulating the use of pesticides or fertilizers. County argues that, if

environmental review is required for these permits, it may have to consider environmental impacts that it will have no authority to minimize or mitigate.

The significance of these purported limitations is unclear. Just because the agency is not empowered to do everything does not mean it lacks discretion to do anything.[10] County concedes it has the authority, under some circumstances, to require a different well location, or deny the permit. This is sufficient latitude to make the issuance of a permit discretionary, at least when particular circumstances require County to exercise that authority. While Chapter 9.36 does not also empower County to impose other mitigation measures, that circumstance does not mean the issuance of a permit is not subject to CEQA. If a project is neither ministerial nor exempt, the agency must comply with the Act. (§§ 21002, 21002.1, 21081.)

The CEQA Guidelines do recommend that a public agency identify its actions "deemed ministerial under the applicable laws and ordinances." (CEQA Guidelines, § 15268, subd. (c).) The agency is encouraged to do so in "its implementing regulations or on a case-by-case basis." (CEQA Guidelines, § 15268, subd. (a).) But the CEQA Guidelines also provide that projects should be labelled as ministerial when they are the sort "over which the agency has *only* ministerial controls." (CEQA Guidelines, § 15022, subd. (a)(1)(B), italics added.) Read together, the guidelines provide that an agency may

---

[10] The question here is a narrow one: whether a decision to issue these permits without environmental review is ministerial or discretionary. We are not called upon here to determine the scope of County's authority once an environmental review process begins. We express no view on that issue.

*categorically* classify approvals as ministerial only when its conferred authority is solely ministerial. The agency may classify other types of project approvals as ministerial on a "case-by-case basis." (CEQA Guidelines, § 15268, subd. (a).)

County argues that its interpretations of Chapter 9.36 and Bulletin No. 74 are entitled to deference. It notes the CEQA Guidelines, which provide that the "determination of what is 'ministerial' can most appropriately be made by the particular public agency involved based upon its analysis of its own laws." (CEQA Guidelines, § 15268, subd. (a).) It also relies on *Friends of Davis v. City of Davis* (2000) 83 Cal.App.4th 1004, 1015, which held that "an agency's view of the meaning and scope of its own ordinance is entitled to great weight unless it is clearly erroneous or unauthorized." (See also *Sierra Club v. Napa County Bd. of Supervisors* (2012) 205 Cal.App.4th 162, 178.) County's reliance on these authorities is misplaced. In those cases, the agencies were interpreting their own ordinances. That is not the case here. When it enacted Chapter 9.36, County explicitly incorporated standards from Bulletin No. 74. It is the legal interpretation of those state standards that is at issue here.

It is true that when reviewing a *particular* issuance decision for abuse of discretion the agency's legal conclusions are reviewed de novo, while its factual determinations are reviewed deferentially for substantial evidence. When an agency determines a particular project is ministerial, it would typically rely on one or more factual determinations. But County is not claiming the ministerial exemption applies to a particular permit. Instead, it claims the exemption applies to an entire category of permits, as a matter of law.

Of course, we do not simply ignore County's interpretation. It is one of the several tools available to us in determining the legal effect of the incorporated state standards. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7.) But, as we said in *Yamaha*, the amount of deference due is "*situational.*" (*Id.* at p. 12.) It depends on factors indicating that the agency has a comparative interpretive advantage over courts and that its interpretation is " 'probably correct.' " (*Ibid.*; see also *Irvin v. Contra Costa County Employees' Retirement Assn.* (2017) 13 Cal.App.5th 162, 172–173 [warning that according deference to a local agency's interpretation of state law may result in the inconsistent interpretation of that law].) County fails to establish that those factors warrant adopting its interpretation here. It is ultimately for the courts to determine the scope and meaning of an ordinance as a matter of law.

### D. Categorical v. Individual Classification

Based on the above analysis, we reject County's argument that the issuance of the permits in question is always ministerial. Because Standard 8.A gives County sufficient authority, at least in some cases, to render those issuances discretionary, County's blanket classification violates CEQA. It enables County to approve some discretionary projects while shielding them from CEQA review.

However, we disagree with the Court of Appeal that the issuance of a permit under Chapter 9.36 is *always* a discretionary project. The fact that an ordinance contains provisions that allow the permitting agency to exercise independent judgment in some instances does not mean that all permits issued under that ordinance are discretionary. *County*

*of Sonoma*, *supra*, 11 Cal.App.5th 11, illustrates this principle. There, the plaintiff argued that the issuance of a permit was discretionary because many of the governing ordinance's provisions were "broad and vague and . . . allow[ed] the [county's Agricultural] Commissioner to exercise discretion." (*Id.* at p. 18.) The Court of Appeal rejected this argument. It reasoned that most of the provisions potentially conferring discretion did not actually apply to the issuance of the *particular* challenged permit (*id.* at pp. 18, 25–27), and that the few applicable provisions did not authorize the imposition of meaningful modifications (*id.* at pp. 18–19, 27–31). The relevant question was "not whether the regulations granted the local agency some discretion in the abstract, but whether the regulations granted the agency discretion regarding the particular project. . . . [A] regulation cited as conferring discretion must have been relevant to the project." (*Id.* at p. 25.) Because the discretionary provisions were not relevant to the permit at issue, the court held that the agency properly classified its issuance as ministerial. (*Id.* at p. 32; see also *Prentiss v. City of South Pasadena* (1993) 15 Cal.App.4th 85, 97.) Permits issued under an ordinance are not necessarily discretionary simply because the ordinance contains some discretionary provisions.

The CEQA Guidelines support this conclusion. A discretionary project is one that "*requires* the exercise of judgment or deliberation" when the agency decides to approve or disapprove it. (CEQA Guidelines, § 15357, italics added.) If the circumstances of a particular project do not *require* the exercise of independent judgment, it is not discretionary. Additionally, the CEQA Guidelines specifically allow "case-by-case" classifications, indicating that projects approved under a

particular ordinance can be either discretionary or ministerial depending on the circumstances.  (CEQA Guidelines, § 15268, subd. (a).)

Chapter 9.36 incorporates a number of standards that may never come into play in the issuance of a particular permit. Standard 8.A only applies when there is a contamination source near a proposed well.  If no contamination source is identified during the permit approval process, the discretion conferred by Standard 8.A will not be involved in that individual issuance decision.  As a result, all well construction permits are not necessarily discretionary projects.  The same principle would apply to Standards 8.B and 8.C.  We have declined to determine whether those provisions confer discretionary authority in some instances.  We need not do so here, in light of our analysis of the authority granted by Standard 8.A.  Even if Standards 8.B and 8.C might be understood to grant discretionary authority in some cases, we could not conclude that they would always do so. Standard 8.B only applies when a proposed well is downhill from a contamination source.  Standard 8.C is only implicated when a proposed well is in a flood area.  In other words, like Standard 8.A, Standards 8.B and 8.C may or may not be involved in the issuance of a particular permit.[11]

---

[11]    Plaintiffs have also asked us to review whether (1) any other standards in Bulletin No. 74 are incorporated into Chapter 9.36 and (2) the inclusion of those standards makes permit issuance discretionary.  The Court of Appeal declined to address these questions because it found that the discretion conferred by Standard 8.A made permit issuance a discretionary project. These questions should be answered by the Court of Appeal on remand in the first instance.

County's final argument is that a decision for plaintiffs will result in increased costs and delays in the issuance of well construction permits. But CEQA cannot be read to authorize the categorical misclassification of well construction permits simply for the sake of alacrity and economy. It bears repeating that an individual permit may still be properly classified as ministerial. Moreover, the fact that an individual project is classified as discretionary does not mean that full environmental review, including an EIR, will always be required. The project may qualify for another CEQA exemption or the agency may be able to prepare either a negative declaration or a mitigated negative declaration after its initial study. Any of these circumstances would obviate the need for an EIR.

In summary, when an ordinance contains standards which, if applicable, give an agency the required degree of independent judgment, the agency may not *categorically* classify the issuance of permits as ministerial. It may classify a particular permit as ministerial (CEQA Guidelines, § 15268, subd. (a)), and develop a record supporting that classification.

### III. CONCLUSION

The Court of Appeal holding that *all* permit issuances under Chapter 9.36 of the Stanislaus County Code are discretionary is reversed. Plaintiffs are not entitled to a judicial declaration to that effect nor to an injunction requiring County to treat all such permit issuances as discretionary.

However, plaintiffs are entitled to a declaration that County's blanket ministerial categorization is unlawful. The Court of Appeal holding that plaintiffs were entitled to such

relief is affirmed. The matter is remanded to the Court of Appeal for it to evaluate the questions it declined to answer and to reassess plaintiffs' entitlement to relief.

**CORRIGAN, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Protecting Our Water and Environmental Resources v. County of Stanislaus
_____

**Unpublished Opinion** XXX NP opn. filed 8/24/18 – 5th Dist.
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S251709
**Date Filed:** August 27, 2020
_____

**Court:** Superior
**County:** Stanislaus
**Judge:** Roger M. Beauchesne

_____

**Counsel:**

Law Offices of Thomas N. Lippe and Thomas N. Lippe for Plaintiffs and Appellants.

Law Offices of Stephan C. Volker, Stephan C. Volker, Alexis E. Krieg, Stephanie L. Clarke and Jamey M.B. Volker for North Coast Rivers Alliance as Amicus Curiae on behalf of Plaintiffs and Appellants.

Law Office of Babak Naficy, Babak Naficy; M. R. Wolfe & Associates and Mark R. Wolfe for California Water Impact Network, California Wildlife Foundation and Landwatch Monterey County as Amici Curiae on behalf of Plaintiffs and Appellants.

Shute, Mihaly & Weinberger, Matthew D. Zinn, Sarah H. Sigman, Lauren M. Tarpey, Peter J. Broderick; John P. Doering and Thomas E. Boze, County Counsel, and Robert J. Taro, Assistant County Counsel, for Defendants and Respondents.

Dennis Bunting, County Counsel (Solano), Peter R. Miljanich, Deputy County Counsel; Jennifer Henning; and Laura E. Hirahara for the California State Association of Counties as Amicus Curiae on behalf of Defendants and Respondents.

Herum\Crabtree\Suntag, Steven A. Herum and Jeanne M. Zolezzi for Association of California Water Agencies and California Special Districts Association as Amici Curiae on behalf of Defendants and Respondents.

Holland & Knight, Jennifer L. Hernandez, Daniel R. Golub and Emily Lieban for California Building Industry Association as Amicus Curiae on behalf of Defendants and Respondents.

June Babiracki Barlow and Jenny Li for California Association of Realtors as Amicus Curiae on behalf of Defendants and Respondents.

Miller Starr Regalia, Arthur F. Coon and Matthew C. Henderson for League of California Cities as Amicus Curiae on behalf of Defendants and Respondents.

Rita L. Neal, County Counsel (San Luis Obispo), Erica A. Stuckey, Deputy County Counsel; Roll Law Group, Courtney Vaudreuil; Stoel Rives, Timothy M. Taylor, Allison C. Smith; Adamski Moroski Madden Cumberland & Green, Thomas D. Greene and Michelle L. Gearhart for County of San Luis Obispo, JUSTIN Vineyards and Winery LLC, Lapis Land Company, LLC, Paso Robles Vineyards, Inc., and Moondance Partners, LP, as Amici Curiae on behalf of Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Matthew D. Zinn
Shute, Mihaly & Weinberger LLP
396 Hayes Street
San Francisco, CA 94102
(415) 552-7272

Thomas N. Lippe
Law Offices of Thomas N. Lippe, APC
201 Mission Street, 12th Floor
San Francisco, CA 94105
(415) 777-5604